MANUEL NÁTER ET AL., Plaintiffs and Appellants, v. INÉS NAVEDO ET AL., Defendants and Appellees.

No. 4613.   Argued May 9, 1929.—Decided June 24, 1929.

*Feliú & La Costa* for the appellants.   *José Martínez Dávila* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This action to recover real property is based especially on the alleged nullity of a certain power of attorney to testate conferred in 1866 in Vega Baja before notary Félix Lajara by the spouses Manuel Náter Marrero and Inés Navedo Dávila and under which the wife acted upon the death of her husband in 1894.

The plaintiffs are collateral relatives of Náter Marrero and there is no doubt that but for the said power of 1866 and the action taken by Inés Navedo in 1894 a part of the estate of Náter would have fallen to them.

The complaint was answered carefully by the defendants and their various defenses included that of *res judicata.*

The case was brought to trial and after giving it consideration the district court overruled the defense of *res judicata,*

but held that the complaint should be dismissed under the rule established by this Supreme Court in *Landrón et al* v. *Navedo,* 12 P.R.R. 253.

It seems advisable to transcribe the following from the statement of the case and opinion of the district court:

"In this complaint are raised exactly the same questions of law that were raised in the Supreme Court case previously referred to, that is, whether or not the power of attorney to make a will conferred by Manuel Nater Marrero on his wife Inés Navedo Dávila was valid, and therefore, whether or not the will made by her by virtue of that power was valid.

"None of the plaintiffs here appeared in the former case, which was decided by the Supreme Court of Porto Rico, and for that reason I understand that it would be improper to apply to this situation the doctrine of *res judicata,* for it would be necessary for that purpose to show the concurrence of the circumstances specified by section 1219 of the Civil Code, *i. e.,* the most perfect identity between the things, causes and persons of the litigants and their capacity as such. In this case there exists perfect identity of all except the litigants, and even as to this, the original action was brought by the descendants and alleged co-heirs, although it is a fact that in that action they sued for their interests.

"The plaintiffs pray for a review of the decision of the Supreme Court in this case and cite jurisprudence which in their opinion would be sufficient to justify a decision in the present case different from that rendered in the former case.

"It is my opinion that the jurisprudence of the Supreme Court of Porto Rico is binding on the courts of the Island and it would have to be a very peculiar and extreme case in which a district court would feel justified in deviating from the rules of conduct and from the legal standards adopted by our highest court, which we feel bound to respect and uphold.

"The only jurisprudence which could have weight in the present case as a precedent for this court, would be that in the case of Landrón. v. Navedo, *supra,* for it establishes the theories adopted by the Supreme Court in circumstances identical to those of the present case. Hence it may be said to be a precedent carrying all of the weight accompanying such circumstances.

"Allow me to quote the following:

" 'The reports of judicial decisions contain the most certain evidence and the most authoritative and precise application of the

rules of the common law. Adjudged cases become precedents for the cases resting upon analogous facts and brought within the same reasons. A solemn decision upon a point of law arising in any given case becomes an authority in a like case, because it is the highest evidence which we can have of the law applicable to the subject and the judges are bound to follow that decision so long as it stands un-reversed, unless it can be shown that the law was misunderstood and misapplied in that particular case.' See Ram on Judgments.

" 'Judicial precedent is not simply law in a general sense but it is part of our law in a sense, and with effects which are distinctively and most strikingly peculiar. The doctrine, as established, is simply this: That a decision by a court of competent jurisdiction of a point of law which lies so securely in the pathway of judicial judgment, that the case could not be adjudged without deciding it, is not only binding upon the parties to the cause in judgment, but the point so decided becomes, until it is reversed or overruled, evidence of what the law is in like cases, which the courts are bound to follow, not only in cases precisely like the one which is first determined, but also in those which, however different in their original or special circumstances, stand or are considered to stand upon the same principles.' See Dillon on Laws and Jurisprudence, p. 231.

"After reading the foregoing it may be seen that this court can not review the present case when in reality it should apply to it the jurisprudence laid down by the Supreme Court.

"Bearing in mind these considerations, I am of the opinion that it is not incumbent upon this court to review or adopt new doctrines distinct from those that have been adopted by our Supreme Court, and for these reasons I think that it is not advisable to consider the questions raised by the plaintiffs; but, on the contrary, the complaint is dismissed solely and exclusively on the decision rendered by the Supreme Court of Porto Rico in the case mentioned."

The power of attorney objected to reads in part as follows:

"No. 312.—Manuel Náter and his lawful wife Inés Navedo.—Reciprocal power of attorney to make will.

"Vega Baja, November 26, 1866.—Before me, the notary, and the witnesses to be named, appeared in their dwelling-house where I went on request, Manuel Náter and his lawful wife Inés Navedo, of this locality, whom I know, and said:

"     *          *          *          *          *          *          *

"  . . . that they mutually confer on each other power of attorney as broad as may be necessary so that the surviving one, within or

without the legal period, may make and perfect his or her last will and testament, declaration or condition according to the estate left, making therein any legacy that he may see fit, as well as remissions of debts, easement of conscience and other things communicated and to be communicated in the future, . . .

"  *    *    *    *    *    *    *

"And they hereby revoke and annul all wills and other testamentary dispositions that they may have made previously in writing or orally, rendering them void and of no avail either judicially or extrajudicially, except this power of attorney and the will made by virtue thereof, which they wish and order to be considered and held as such, to be observed and complied with in all of its contents as his or her last and deliberate will. They so order, declare and sign, the witnesses being Ramón Pérez, Francisco Bolarin and Acisclo Corbet. their neighbors; to which I attest.—Signed: Inés Navedo Náter.—Manuel Náter.—Before me, signed: José Félix Lajara."

In their brief the plaintiff-appellants make great efforts to distinguish this case from that of *Landrón et al.* v. *Navedo, supra,* but, in our judgment, without success. A mere reading of the opinion of this court in the said case is convincing that the real question therein involved and determined was whether the power of attorney of 1866 and the will made in 1894 were void or valid.

The only new ground of nullity alleged in this action is that the power of attorney of 1866 to testate, "whether considered as such power or as the will of either testator is absolutely void and ineffective because it does not bear the signatures of the witnesses."

A careful study of the jurisprudence cited by the appellants leads us to the conclusion that the lack of the signatures of the three witnesses who were present at the execution of the document does not affect its validity.

In *Succession of Iguaravídez* v. *Rubert Bros.,* 23 P.R.R. 272, this court expressed itself as follows:

"One of the other alleged illegalities of the mortgage is that it has no instrumental witnesses. There can be little doubt of what was the positive law in this regard, but it seems that the contemporary practice made the provision of law practically a dead letter. Further-

more, the judgment of the court below points out that if this lack of the signatures of instrumental witnesses were to prevail, the whole suit must fail because some of the original deeds to the Succession of López themselves lacked instrumental witnesses. The courts at the time evidently tolerated the lack of the signatures of instrumental witnesses and that contemporary construction must be respected.''

The commentators always speak of the necessity of the presence of witnesses, but not of their signatures. So does the jurisprudence. In the brief of the appellees are transcribed two old models said to be taken from the ''Cartilla Real'' of Santiago Alvarado published in 1836.

The first, which appears on page 252, is as follows:

''This is my last codicil and will, which I wish to be taken for my codicil, or for such of my last will and testament as under the royal statutes has the greatest force. And I further direct that all of the aforesaid be preserved, complied with and executed.— It was thus executed at . . . on . . . etc., before witnesses N., N. and N., residents of that place.— And the maker of the codicil (whom I, the Notary, know) signed it.''

The second, which appears on page 264, is as follows:

''And therefore revokes and cancels any other wills and testaments, codicils and any others previously made in writing, by word or otherwise, so that they should not avail in court or out of court, because it is his will that only the one made by virtue of this power of attorney should be considered as my testament or my codicil, in such way and manner as the law may prescribe.— It was thus executed at . . . on . . . etc., before witnesses N., N. and N., residents of the said place, etc.— And the testator, whom I, the Notary, know, signed it (or did not sign it), one of the witnesses signing it for him at his request.''

In his treatise on Notaries Manuel Fernández Casado devotes a whole chapter to the examination of precedents, statutes and commentaries on the signing of public documents. The following paragraphs are quoted from it:

''This vagueness of the law was the cause of long and learned discussions in the professional press at that time and the regulations of 1862, in conformity no doubt with section 29 of the statute,

established in its article 75 the following: 'If the testators could sign, there will be no necessity for the witnesses to sign or for one of them to be able to sign.' Previously in article 73 it had been said: 'But if the testators or any of them should be unable or did not know how to sign, the notary shall so state, it being incumbent on one of the witnesses to sign, writing in his own hand in the title that he does so as a witness and in behalf of the testator or witness who does not know how or can not do it.' Nor is this article in harmony with the statute or with article 75 of the regulations, because it appears from a reading thereof that should any of the testators not sign, it should be done by both documentary witnesses, either of them signing for the other at his request if the latter could not sign. So that, according to sections 17 and 25 of the law it appears that the witnesses should sign anyhow, whether or not it is done by the testators; according to section 27 there are cases where the witnesses should not sign; according to article 75 of the regulations of 1862 where the testators sign the documentary witnesses are not required to do so, and according to article 73, if any of the testators did not sign, it should be done by both witnesses, either of them signing *for himself* and in behalf of such testator; and if either of the witnesses could not sign, the other had to sign for himself and in his behalf. It will be noted, therefore, that the framers of the law and those who drafted the regulations did not adhere to a single standard regarding the necessity of the signature of the documentary witnesses.

"These inharmonious provisions encouraged discussions on the matter and gave rise to diverse practices among notaries, making it necessary to enact an explanatory provision to settle definitely a question of such importance. To this effect they instituted the proper proceedings in which, on a report from the Administrative Section of the Supreme Court of Justice and another from the Judical Division of the State Department, it was provided by Royal Decree of June 25, 1868: '1. That there should be required in the original copies of deeds the signatures of the witnesses to the document or those having knowledge of the fact, in a proper case, provided they can sign; and 2. That where a witness, or the parties or either of them could not sign, the other witness, when signing, should state in his own handwriting and in the title that he signs as a witness and in behalf of the other or of the party who could not sign.'"
1 Treatise on Notaries by M. Fernández Casado, 569.

It was undoubtedly due to the careful study of the law and the practice in force in 1866 in this island of Porto Rico

that the eminent attorneys who intervened in the case of *Landrón et al.* v. *Navedo* did not raise this point of the lack of signatures of the witnesses to the power of attorney to testate under consideration.

Having reached the conclusion that the document attacked is valid of itself, it is unnecessary to consider the other errors assigned by the appellants in their brief.

The appeal must be dismissed and the judgment appealed from affirmed.

Justices Aldrey and Texidor took no part in the decision of this case.